We're going to start with the Eggum matter. Each side will have 10 minutes. If appellants would like to reserve time for rebuttal, please be aware that you are responsible for keeping track of your own time. And Ms. Wagner, you may begin whenever you are ready. Good morning, Your Honor, and may it please the Court. My name is Anne Wagner, and I'm here on behalf of Marlow Todd Eggum. I'm going to attempt to reserve one minute for rebuttal. Mr. Eggum was convicted of stalking his ex-wife based solely on letters sent from prison to people other than his ex-wife. The letters were crass and hateful, but they were not addressed to Ms. Gray, and they did not ask recipients to contact her. They were addressed to a hostile audience, including Mr. Eggum's mother, who was extremely ill during this period and thought the pornographic movies he had made with his ex-wife were evil. There is insufficient evidence in this record that Mr. Eggum intended the recipients to forward the letters to his ex-wife, and indeed, none of them exhibited the slightest inclination to do so. The State has argued that § 2254d2 does not apply to sufficiency claims, and most recently in the Mr. Eggum did not dispute that, as a general matter, sufficiency claims are analyzed under D1, but Sarasod did not concern an antecedent mischaracterization of fact on the way to analyzing that legal question, and so it does not contain a holding on the question of whether D2 can apply to a blatant mischaracterization of fact as occurred here. Ultimately, this question doesn't necessarily need to be answered by this Court, because Jackson v. Virginia, the controlling precedent here, does not allow a State Court to blatantly mischaracterize facts that aren't in the record in the process of analyzing a sufficiency claim. So, Counsel, let me ask you about that. There's a letter wherein your client, or Mr. Eggum says, you have got Fasano's letter, and you've got a decision to make. You either need to send it, or you need to decide that you are going to take care of family business yourself. Send it to whom? Ms. Fasano is Ms. Gray's divorce attorney, and there was an open question in their divorce order whether the intellectual property that was applied to these pornographic videos that they had made, Mr. Eggum directed, produced them, and Ms. Gray starred in them along with other performers, whether that property belonged to one or both of them, or just Mr. Eggum, the director. And so, this is a dispute about a legal issue that was open, and thus it falls into a statutory exception, because it has to be beyond a reasonable doubt that this was not a legitimate subject of conversation, and it was. So, I'm still asking, who was the letter supposed to be sent to? Ms. Fasano is the divorce attorney of Ms. Gray. Okay. So, I see that, as you say, they weren't sent directly, but in one case, there's a suggestion that the father intervene with Gray, and then another one asks his mother to inform Gray that he's giving away maps to the house and sexually explicit videos. So, my question then is, why would it be irrational under Jackson v. Virginia to conclude that this was tantamount to a threat to her? Well, the question isn't whether it was a threat. The question is whether he intended his mother to forward those letters to Ms. Gray. But the realistic, why does he say she should inform Gray that I'm going to give away maps to the house, that I'm going to release this sexually explicit video? All of this subject matter, although it's very hard to listen to? It's not the subject matter. It's like, if all he said was, hi, mom, check this out, I might have a different view of the evidence, but that's not what he's saying. Okay, that particular letter was meant to be sent to Fasano, and that's the divorce attorney. I understand. Okay, so it falls into a statutory exception. So, it actually doesn't, we don't even need to think about intent for that letter, because it's a legitimate subject of dispute over their, an open issue in their divorce agreement. And the letter to his father is, if you read it in context, and I encourage you to read the testimony of Ms. Gray in full, it's the state's supplemental excerpts of record. The letter to his father is extremely angry that his father has visited Ms. Gray and their daughter even once. I mean, he is, pardon my language, pissed off. He tells his father he has no effing idea what his father was doing visiting her. And so, yes, he does put this alternative option before his father either intervene or stay away. But in the context of his father, like, really being hostile to this whole subject matter, there's no way that he thought that he was going to take the intervene choice. In fact, his father was so upset about this letter that he contacted the prison about it. And there was no, no way that he was going to therefore intervene in the dispute between his son and his daughter. I mean, it was a very upsetting subject for him. My understanding of Jackson is that you take the evidence in the light most favorable to the prosecution. Correct. And ask the question whether any reasonable trier effect could conclude that your client did what he's accused of doing. Beyond a reasonable doubt. Yes. So there, you know, there need to be two letters that are sent to or intended to be passed to Ms. Gray. The juror would need to find this beyond a reasonable doubt. Yeah. Based on the most, the light most favorable to the prosecution. But here it's very notable that the prosecution at trial never argued and never solicited questions about whether these letters were intended to be passed on by the recipients. The theory at trial was different. The theory at trial was that the DOC was going to be monitoring these letters before they went out and sending them on to Ms. Gray because she was named in them. I mean, that's not actually what happened either. There was, you know, the sheriff had to ask for an investigation to get the DOC to forward the letters. And so it wasn't a standard procedure at all. And so on appeal, they just abandoned that theory and came up with a new one about which they had elicited zero evidence. And the jury almost certainly did not think, because the prosecution had never argued, that the letters were intended to be forwarded by the recipients. And there was a ton of evidence about how upset these, the recipients of these letters were that they received them. And, you know, they felt protective of Ms. Gray. Mr. Agam's father had just visited her and visited the daughter. There is no way that Mr. Agam thought that they would be forwarded. And the jury never heard evidence about that. So the other issue that the state actually has waived in this appeal is that this, that a stalking conviction in Washington has to be based on conduct, not speech. Conduct, and it's notable that this issue has preserved and exhausted in the habeas process by a pro se statement of additional grounds, and it was not briefed by an attorney in the state court. So the state courts didn't consider this issue. But the element in the state statute is that the conviction has to be based on conduct. And the state courts have interpreted that element to mean that it can't be based solely on pure speech. And 100% of the evidence in this case was the content of the letters that Mr. Agam sent to people other than his ex-wife. And so the statute itself forbids a conviction on this evidence. And the state waived this argument, and they have no answer for it now. So they really cannot, before the court today, assert something different. I'd like to reserve the remaining time, if I may. Okay. Thank you, counsel. All right. Mr. Sampson. Thank you, Your Honor. May it please the court. John Sampson, Assistant Attorney General, representing the respondent appellee. The district court correctly denied relief in this case because the state court decision that there was sufficient evidence to support the conviction for stalking was not objectively unreasonable. Addressing the court's question regarding the letter to the mother, this is Excerpts Record 1, Volume 1, 84 and 85, the Fasano letter. Viewing that evidence in the light most favorable to the prosecution, a jury could infer that, in fact, Mr. Agam wanted this delivered not to just the attorney, but to the victim herself. And the prosecution under Jackson v. Virginia need not rule out every possible hypothetical, need not necessarily prove the case that they have presented in their under Jackson, what's important is that the evidence in the record would prove the elements of the crime. So the jury could actually find a different theory on which to convict the defendant, as long as that evidence supports the elements. And in this case, the letter actually said that the letter was written to be forwarded to Janice, not to Fasano, for Janice's consideration, it was nothing more than an offer to settle this. But then it continues, but this time the offer being tendered with Janice, being informed that essentially I could legally sell my movies or give them away. So a jury could rationally determine looking at that letter that Mr. Agam was wanting his mother to tell the victim, I am going to be selling these videos and giving them away to sex offenders who are then going to come to your house. There's also evidence that Mr. Agam, his own words, that he actually did give away these videos. So the argument that it can't be based on pure speech, we have more than just pure speech, we have actual conduct, evidence that he was giving out the videos to people, to sex offenders to go stalk the victim. More importantly, the argument that the argument regarding pure speech sort of misstates the actual holding of the two cases cited, the Nguyen case and the Bradford case, those actually involved text messages, which were very, the equivalent of the letter sent here. And in the Bradford case, they were text messages sent to a third party, which were then to be forwarded on to the victim, which is the same case. Neither Nguyen nor Bradford said that that type of communication was insufficient. Rather, they were dealing with whether it violated the First Amendment, and they found that it did not violate the First Amendment because it involved conduct, not just pure protected speech. Is there any evidence that these maps or videos were ever given away? There is the defendant's own statements that he was doing that. So it's an omission by a party opponent and communications he wrote saying that he had in fact given these away to sex offenders who were being released, and so therefore they would be approaching her. So that jury looking at this evidence could reasonably infer that to be true. And the question is not... Had access to these videos while incarcerated? He had, the record may not be entirely clear. He certainly did not have them in his prison cell, but he claimed to have had access to them, and he claimed to have been giving them away. And that could be done by somebody outside of the prison. So he could communicate with somebody his own statements. It was a mission of party opponent was that I have in fact done this. So it shows... You characterize that the government characterizes that as conduct, not speech, correct? Correct, Your Honor. But it's also what I'm saying is that the petitioner goes too far in relying on Wynne and Bradford to say pure speech is not enough. Actually, what the stocking statute prohibits is communication, conduct through communication. And the statute itself, 9A46110, defines course of conduct to include the sending of an electronic communication. So the repeated sending of letters, the repeated sending of text messages, those are a course of conduct. And that's what the state court of appeals here found was that he engaged in conduct. It wasn't that he just spoke, but he actually engaged in a course of conduct. And it was not just the one letter. There was letters to the pastor where he told the pastor about how this one other woman was killed by her husband, and he could have done something that... Egan could have done something, but he did not do anything to stop it. And now the pastor had a chance to do something to stop it. And a jury can infer that what he was telling the pastor to do was talk to Janice and tell her to behave. He also suggested in those letters to the pastor that she get counseling, church counseling, which he would do, and that the pastor mediate the issue. There was also the letter to the father. And although petitioner tries to distinguish what he said about mediating the issue, the jury, again, can view this in the light most favorable to the prosecution. And they could reasonably determine that he, in fact, intended the father to communicate these threats. So the court of appeals found that there was a course of conduct. They found that it was harassing and that it was intended to cause and did cause fear by the victim. And those are the only elements that had to be proven. And the fact that the state court was not unreasonable in making this determination precludes relief. Unless the court... I do have a question, counsel. So it's my understanding that Mr. Egan is asking the court to view the sufficiency of the evidence claim under the unreasonable determination of the facts clause under section 2254 D2. But the government is asking us to review it as unreasonable application under 2254 D1. Why are you right? That is the correct position, Your Honor, because an appellate court reviewing the record for sufficiency of the evidence is not determining facts. The Supreme Court has said that the standard of review and its sufficiency of the evidence does not permit fine-grained factual parsing of the evidence. That is the Coleman v. Johnson case. So the court is not determining facts as to whether A and B and C happened. What they're determining is was the evidence viewed in the light most favorable to the prosecution, was that sufficient for any rational try or fact to find these elements to be proven beyond a reasonable doubt. That is a legal conclusion. I would submit that this court has at least twice in the cases we provided in the Supplemental Citation of Authority, Juan H. and Sara Saad, has explained that this is a D1 review, not a D2. And then in the brief, I also, I believe I referred to, maybe I don't refer to, I'll strike that. The other thing I would say on that point, Your Honor, is even if we were incorrect, and even if D2 did apply, this is still not an unreasonable determination of the facts, because the state court did not misstate any of the record. Petitioner argues that they court, citing excerpts record 46 and 47 in Volume 1, the state court made a statement that's not supported by the record. And I would submit that that language that they referred to actually dealt with the separate conviction for harassment, which no longer exists. It did not deal with the determination of facts as to the stalking claim. Unless the court has further questions, I would ask that this court affirm the district court. Okay. Thank you, Mr. Sampson. Thank you. Ms. Wagner? These were actual physical letters, correct? Correct. Which he created? Yes, he wrote. Prepared, hand wrote? Yes. And deposited in the mail? Yes. Knowing that his mail was subject to review by prison authorities? Yes. But he believed that the prison authorities... Just stop right there. Sure. Why isn't that conduct? It would, it could be conduct if the letters were then sent to the victim. So a repeated sending of something in the mail to the victim could be conduct. But here, the letters were not sent to the victim. So it's a completely different situation than in Wynne, where the text message were sent directly to the victim. And everybody knew that they were going to receive it. The Wynne case that my opposing counsel discussed is an as-applied First Amendment challenge to a stalking conviction. And what it holds is that in that case, there was mixed conduct and speech. So there were visits to the house in addition to these repeated text messages. And so that was analyzed in a different, you know, it wasn't a challenge to pure speech, as it would be, for example, in Mr. Agam's case, if anybody had brought the claim. So what the court did in the process of analyzing that as-applied challenge was construe the statute to have the element conduct to be defined to be something that cannot be pure speech. And here, it was pure speech. It was the content of the letters, and nothing was actually to the victim. On the DOC point, Mr. Agam knew that the DOC was reviewing the letters, but he did not know that they were going to be forwarded. So his idea was that the policy required the letters to be not sent if they violated policy. Thank you. Thank you, counsel. Okay, this matter is now admitted. And if we can please have the Wellner counsel start making their way up.
judges: HAWKINS, McKEOWN, ALBA